O'CONNOR, Plaintiff in error, v. STATE, Defendant in error.

*June 10—July 1, 1966.*

For the plaintiff in error there was a brief by *James M. Shellow,* attorney, and *Shellow, Shellow & Coffey* and *William M. Coffey* of counsel, all of Milwaukee, and oral argument by *James M. Shellow* and *William M. Coffey.*

For the defendant in error the cause was argued by *Robert E. Sutton,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

WILKIE, J.  Two issues are presented here: First, was it error for the prosecution to comment, during the *voir*

*dire* examination, on the fact that there were going to be defense witnesses?

Second, did the trial court err in limiting the plaintiff in error's cross-examination of Schoenemann, a prosecution witness?

### Reference to Defense Witnesses.

During the *voir dire* examination of the jury, the following colloquy took place between the defense attorneys, Frinzi and Toudor, the assistant district attorney, Tierney, and the court:

"*Mr. Frinzi:* Your Honor, to save some time here, I would like to take these subpoenaes which are part of the record and read over the witnesses to the jury, the entire jury panel, and ask them if they are acquainted with any of these witnesses rather than ask each and every individual the same question.

"*The Court:* Is there any objection to that procedure?

"*Mr. Tierney:* No.

"*Mr. Frinzi:* Are all these subpoenaes all of the subpoenaes?

"*The Clerk of Court:* That's all I have.

"*Mr. Frinzi:* Members of the Jury, I will read the names of all of the witnesses that will be called by the State in this particular case.

"*The Court:* I suppose some may appear without subpoena, but at least you have those who were subpoenaed.

"*Mr. Frinzi:* Yes.

"*Mr. Tierney:* I don't want to be bound by counsel's statement. That's all of the witnesses who are to be called by the State.

"*Mr. Frinzi:* Well, I would then like to have all of the witnesses who are going to be called and ask the jury if they are acquainted.

"*Mr. Tierney: I would like to have the list of alibi witnesses too, your Honor.* [Emphasis added.]

"*Mr. Toudor:* I object to that as an improper remark.

"*The Court:* Well, the list has already been made. So if the District Attorney wants to make any inquiry, he may make it, but Mr. Frinzi has an inquiry he wants to make so you may proceed. We'll have to take turns on these matters.

"*Mr. Frinzi:* Rather than burden you all with individual questions, I make these questions relative to these witnesses direct to all of you; and if any of you have any acquaintance with any of these witnesses, will you kindly indicate so by raising your hand and then we will ask you individually what your acquaintance may be. . . ."

The next morning there was another exchange during the *voir dire.*

"*Mr. Frinzi:* I don't know if we should ask the jury to leave. On the question of the method of striking the jury, I checked the law last night, and I would like to be heard on that.

"*Mr. Tierney:* Well, before we get to that point, I have some more matters to take up with the panel here.

"*Mr. Frinzi:* I am sorry, Mr. Tierney. I thought you had completed.

"*Mr. Tierney: Particularly I want to read the names of particular witnesses who may appear in this case for the defendants.* [Emphasis added.]

"*The Court:* Well, you may finish your questioning and we will take a short recess while I hear any questions of law.

"*Mr. Toudor:* I want to object, your Honor, to the statement of the District Attorney.

"*The Court:* What statement was that?

"*Mr. Frinzi:* I think that this matter should be heard without the presence of the jury panel, your Honor, because it hinges on questions of law.

"*Mr. Tierney:* Well, the Court wants to know what my statement was.

"*The Court:* Well, read the statement.

"(The reporter read aloud Mr. Tierney's remarks)."

Objection was taken to both references to defense witnesses and plaintiff in error moved for a mistrial, after the jury was excused, following the second remark. The motion was denied, but the trial court admonished the district attorney not to continue the line of questioning.

Relying solely (outside of a recommendation by the California Law Revision Commission)[2] on *State v. Coc-*

[2] Alibi in Criminal Actions, California Law Revision Commission Report (1961), vol. 3, page J–6.

co,[3] plaintiff in error contends that it was prejudicial error, in the absence of cautionary instruction (no such instruction was requested here) for the prosecution to refer to the list of alibi witnesses and request the names of defense witnesses during the *voir dire* examination.

In *Cocco,* the defense counsel stated to the jurors on the *voir dire* that the defendant had an alibi. Later the prosecuting attorney, during the course of his opening argument to the jury, read the alibi notice indicating that the defendant would attempt to prove an alibi. No such evidence was offered and no explanation was given for the failure to do so. The court said:

"Under no conceivable theory should this document have been presented to the jury. It could not do otherwise than prejudice the jury, when there had been no evidence of an alibi. *And the act of defendant's counsel in discussing the matter of alibi before the prospective jurors and the impaneled jury did but aggravate the prejudice.* The court should on its own motion have protected the defendant from this reading of the notice and the failure so to protect him was erroneous and prejudicial." (Emphasis added.)[4]

*Cocco* is distinguishable in at least three respects: First, in *Cocco* the reference to the alibi was protracted and pointed, since the notice itself was actually read to the jury, while here the remark was brief and almost offhand. Second, in *Cocco* the alibi notice was read to the jury during the prosecution's opening statement—thus unquestionably bringing it directly to the attention of each juror—while here the comments were made during the course of striking the jury, a process which took almost two days and filled 265 pages of the record. Third, the error in *Cocco* was compounded by the broaching of the subject by the defense counsel.

---

[3] (1943), 73 Ohio App. 182, 55 N. E. (2d) 430.

[4] *State v. Cocco, supra,* footnote 3, at page 186.

We are not so naive as to believe that the two references to the alibi or defense witnesses, though brief, were inadvertent. We know the prosecuting attorney as one of the most experienced in Milwaukee county. Though the two references to defense witnesses were improper, in the face of the whole record, we do not consider that these two fleeting references, coming when they did in the course of a lengthy trial, amounted to prejudicial error.

## Restriction of Cross-Examination.

On cross-examination, counsel for plaintiff in error attempted to learn how many people the witness Robert Schoenemann had talked to in the district attorney's office shortly before the trial and further tried to test his credibility and memory by having him describe the detectives who had questioned him two days after the crime. The trial court limited cross-examination in both areas and plaintiff in error contends that this was error. Specifically, he argues,[5] in regard to the first line of questioning, that the defense has the right to ascertain whether the witness has been influenced or coached by the prosecution. While this undoubtedly is an accurate statement of the law, the avowed purpose of this inquiry, as stated by plaintiff in error's trial counsel, was merely to "test the credibility and to test the memory" of the witness.

At any rate, the degree and manner of cross-examination in criminal cases are matters lying largely in the discretion of the trial court.[6] Schoenemann was not a

---

[5] Relying on *United States v. Standard Oil Co.* (7th Cir. 1963), 316 Fed. (2d) 884, and *Solar v. United States* (Mun. Ct. App., Dist. cf Col., 1953), 94 Atl. (2d) 34.

[6] *Sprague v. State* (1925), 188 Wis. 432, 440, 206 N. W. 69; *Hedger v. State* (1911), 144 Wis. 279, 296, 128 N. W. 80.

crucial witness in the case since he was not in the bar when the shooting occurred. Furthermore, despite the restrictions imposed by the trial court, his cross-examination comprised 82 pages of the record. Under the circumstances, there was no abuse of discretion by the trial court.

*By the Court.*—Judgment affirmed.