STATE, Respondent, v. SCHENK, Appellant.

*No. State 25. Argued November 30, 1971.—Decided January 4, 1972.*

(Also reported in 193 N. W. 2d 26.)

For the appellant there was a brief by *Stanley S. Chmiel* and *Chmiel & O'Connell,* all of Appleton, and oral argument by *Stanley S. Chmiel* and *John D. O'Connell.*

For the respondent the cause was argued by *Robert J. Vergeront,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

[1] In reviewing defendant's postconviction motions, the trial court stated that the motions were made pursuant to sec. 974.06, Stats., and then proceeded to make findings of fact and conclusions of law. However, under that section, defendant is precluded from a review of the errors which are alleged. *See State v. Langston,* ante, p. 228, 191 N. W. 2d 713. The record does not reflect that defense counsel made postconviction motions pursuant to sec. 974.06. Therefore, it does not support the trial court's statement to this effect, and we consider postconviction motions in this case were not made pursuant to such statute.

CONNOR T. HANSEN, J.   The facts of this case will be set forth in considering the issues raised on this appeal, which are:

(1)  Sufficiency of the evidence;

(2)  Failure to give a cautionary instruction, sua sponte, as to the testimony of defendant's accomplice;

(3)  Refusal to allow cross-examination of defendant's accomplice on the question of bias;

(4)  The display of an exhibit before it was properly in evidence and a statement by the prosecution in regard to taking a photograph thereof;

(5)  An improper courtroom use of measurements; and

(6)  New trial in the interest of justice.

### *Sufficiency of evidence.*

The record reveals that on the evening of November 26, 1969, defendant and Gerald Kapitzke left the Tiger's Den Bar with the express intention of committing robbery.  After driving around for awhile, they stopped in the rear parking lot to the Golden Eagle tavern.  Defendant changed clothing, put a black patch over one eye, and armed with a .32-caliber automatic pistol belonging to Kapitzke, entered the rear door of the tavern.  He walked up to the north end of the bar and said to the bartender, Lawrence Kieffer, "This is a stick-up; give me the money out of the till."  After a noncooperative reply by Kieffer, defendant fired a shot into the ceiling and said, "I'll show you I'm not fooling."  Kieffer replied, "If you want the money that bad I'll have to go back and get the key."  Kieffer then turned around, walked the length of the bar, turned the corner and went through a doorway to his living quarters which were located at the east end of the premises.  At some point during this interval, defendant hollered, "Hold it; that's far enough," and fired a second shot which struck the south wall

between the end of the bar and the doorway. The bullet entered the wall 19½ inches west of the east wall and six feet nine inches from the floor. Kieffer testified he did not know whether or not he was completely out of the room when the second shot was fired. Defendant, however, testified that Kieffer was out of the room and that he fired the shot in the expectation that he would come back in. He further testified that he held the gun straight out when he shot and that he had never fired a pistol before to any great extent.

At the time of the incident there were two witnesses seated at the bar. Both testified that Kieffer was somewhere between the end of the bar and the doorway when the second shot was fired. One witness testified that he was between the point where the bullet hit the wall and the doorway; whereas, the other witness placed him at a position behind the point where the bullet struck the wall. Neither witness was watching the defendant when he fired the second shot. Both witnesses admitted to the possibility that Kieffer was completely out of the room when the second shot was fired. One witness testified that after defendant yelled at him, Kieffer began to run, although Kieffer himself and the other witness testified he was walking but took a fairly large step into his living quarters when he reached the end of the bar. Both defendant and Kapitzke testified that the entire incident occurred in no longer than one minute.

Thereafter, defendant ran out of the back door and got into the car. Kapitzke testified defendant told him something to the effect that there was a "hero" in there, and either "I took a shot at him," or "I might have hit him," or "I think I hit him." On cross-examination, Kapitzke testified defendant said he "probably hit someone," or "I might have hit him," but that defendant never said "I took a shot at him," nor told him he might have fired a shot with the intent to hit anyone.

In order to sustain a conviction for attempted murder, two elements must be established: (1) A specific intent to take the life of another human being; and (2) an unequivocal act which, except for the intervention of some extraneous factor, would have resulted in the death of that individual. Secs. 939.32 and 940.01, Stats. Defendant argues that the evidence was insufficient to establish the element of specific intent.

Since the law cannot enter the subjective mind of an individual accused, intent must be evidenced by inferences from the words and conduct of the actor and the circumstances surrounding the act. *State v. Wells* (1971), 51 Wis. 2d 477, 187 N. W. 2d 328; *State v. Vinson* (1955), 269 Wis. 305, 68 N. W. 2d 712, 70 N. W. 2d 1. The general rule is that an accused is presumed to intend the natural and probable consequences of his acts, voluntarily and knowingly performed, *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 187 N. W. 2d 823; *Zebrowski v. State* (1971), 50 Wis. 2d 715, 185 N. W. 2d 545, although evidence of a contrary intention may rebut the presumption. *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609; *Greer v. State* (1968), 40 Wis. 2d 72, 161 N. W. 2d 255; *State v. Wells, supra.* In the instant case, the jury was adequately instructed in this regard.

The evidence, taken most favorably to the state, supports a finding that Kieffer was somewhere between the corner of the bar and the door to his living quarters when the second shot was fired. *McKissick v. State* (1971), 49 Wis. 2d 537, 549, 550, 182 N. W. 2d 282; *Zebrowski v. State, supra,* page 723. Although Kieffer and the two witnesses admitted the possibility that Kieffer was out of the room at that time, contrary possibilities, in themselves, do not preclude a jury from finding a fact. *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379. The jury was entitled to consider and accept as true, evidence as to the location of the bullet hole, the short period of time in which the entire incident occurred, and

defendant's statement to Kapitzke acknowledging that he might have hit Kieffer. Although Kapitzke contradicted himself with respect to the exact words told him by defendant, his testimony was not so self-contradictory so as to preclude the jury from finding that defendant believed he might have hit Kieffer. There is sufficient credible evidence so that the jury, acting reasonably, could be convinced of the defendant's guilt beyond a reasonable doubt. *Zebrowski v. State, supra; Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183.

*Cautionary instruction as to the testimony of defendant's accomplice.*

Appellant concedes that no request was made of the trial court for a cautionary instruction as to the testimony of defendant's accomplice, Kapitzke, but argues it was error not to have given such an instruction.

This court has consistently held that it would consider the failure to timely object to jury instructions as a waiver of any alleged defects in those instructions. *Kimmons v. State* (1971), 51 Wis. 2d 266, 268, 186 N. W. 2d 308; *Mitchell v. State* (1970), 47 Wis. 2d 695, 699, 700, 177 N. W. 2d 833. Therefore, since the defendant neither submitted requested instructions, nor objected to those given or requested additional instructions, we conclude that the defendant has waived his right to object to the instructions as given.

*Cross-examination of accomplice.*

Cross-examination of the accomplice, Kapitzke, established that he had been granted immunity from prosecution. Further cross-examination was attempted, to establish bias and self-interest, and such examination was foreclosed by the trial judge.

Appellant asserts it was error for the trial court to have so restricted the cross-examination of Kapitzke.

This court has recognized the expanded rule of relevancy as set forth in 1 Wharton's, Anderson, *Criminal Evidence* (12th ed.), pp. 284–287, sec. 148; *Oseman v. State* (1966), 32 Wis. 2d 523, 145 N. W. 2d 766; *Berg v. State* (1969), 41 Wis. 2d 729, 739, 165 N. W. 2d 189; *Zebrowski v. State, supra,* page 724. Also this court has adopted Rule 303 of the American Law Institute *Model Code of Evidence; Whitty v. State* (1967), 34 Wis. 2d 278, 294, 149 N. W. 2d 557, which permits the trial court to exclude relevant evidence under certain circumstances, and in the exercise of its discretion. In *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129, this court considered the scope of cross-examination and quoted with approval the rationale of *Neider v. Spoehr* (1969), 41 Wis. 2d 610, 618, 165 N. W. 2d 171. In *Boller, supra,* page 181, it was stated:

". . . If the question is relevant and is otherwise admissible and the information solicited is within the knowledge of the witness, it should be within the sound discretion of the trial judge to determine whether or not questions on cross-examination prevent an orderly and cogent presentation of the evidence. . . ."

The effect of the foregoing decisions is to leave the question of admission or exclusion of evidence to the discretion of the trial judge. Therefore, under these rules we review the trial judge's decision to foreclose further cross-examination after immunity had been established. In *State v. Gresens* (1968), 40 Wis. 2d 179, 186, 161 N. W. 2d 245, this court held:

". . . We believe, however, it was error for the trial court to restrict the defendant's cross-examination of the witnesses who were granted immunity. The defendant has a right to bring out the motives of the state witnesses on cross-examination. 58 Am. Jur., *Witnesses*, p. 389,

sec. 722; Annot. (1958), 62 A. L. R. 2d 610. The defense has a right to know the basis for the immunity; what other promises were made, if any; and whether the witness has been influenced or coached by the prosecution. *See State ex rel. Kowaleski v. Kubiak* (1950), 256 Wis. 518, 41 N. W. 2d 605; *O'Connor v. State* (1966), 31 Wis. 2d 684, 143 N. W. 2d 489. . . ."

In *State v. Harling* (1969), 44 Wis. 2d 266, 170 N. W. 2d 720, this court held as error the refusal of the trial court to permit defense counsel to inquire into the bias or prejudice of an expert witness for the state. It was there held, however, the error was harmless in light of the overwhelming evidence of guilt and the fact that the action was tried to a court rather than to a jury.

The statement by defendant to Kapitzke, to the effect that he might have hit Kieffer, was damaging to defendant's case. Besides providing evidence on which the jury could infer intent, it also discredited the testimony of the defendant, that he fired the shot after Kieffer had left the room in the expectation he would come back in. Nevertheless, there was sufficient evidence, aside from the statement to Kapitzke, upon which the jury could have inferred the requisite intent of the defendant. Furthermore, the jury was aware of Kapitzke's involvement in the crime, the fact that he received immunity, and that the police officers told him they would help him as much as they could.

On postconviction motions, the trial court was of the opinion that the attempted inquiry as to what the police officers had told Kapitzke was hearsay. If the testimony of Kapitzke was sought to prove the truth of the statement made to him by the police officers, the testimony would be hearsay and inadmissible. However, the testimony would have been admissible to show the effect of the statements on Kapitzke and would have probative value as to his motives for testifying. *Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281.

We conclude it was error for the trial court to restrict the defendant's cross-examination of the accomplice who was granted immunity, but do not conclude it reaches such constitutional proportions as to constitute prejudicial error requiring a reversal.

### Use of blackboard exhibit.

The jury was allowed to view the premises at the request of both attorneys, following opening statements; and had an opportunity to make observations of all physical aspects involved in this case, including the hole in the south wall. This hole was identified during the trial as having been caused by a bullet from the pistol fired by the defendant.

Throughout the trial, a blackboard containing a diagram of the Golden Eagle tavern was present in court and was used by both counsel. The diagram was prepared by police officer Robert Breckenridge and contained the notation of "bullet hole" on the south wall of the tavern 19½ inches west of the east wall and six feet nine inches from the floor. The alleged "bullet hole" was referred to by the prosecution prior to testimony by Breckenridge with respect to the taking of measurements and the preparation of the diagram. Appellant argues first that it was error for the exhibit with the designation of the bullet hole to be placed before the jury prior to its authentication; and second, there was no evidence that the hole was a bullet hole or that it was caused by a bullet fired from the defendant's gun.

However, at no time did defendant object to the diagram or to the designation of the bullet hole on the south wall. In fact, defense counsel made use of the diagram and stipulated to the reception of a photograph thereof into evidence. Authority relied on by appellant indicate that in those cases proper objection had been made.

Furthermore, the "bullet hole" is an obvious and almost necessary inference from the independently established facts in this case. *Krcmar v. Reichert* (1965), 26 Wis. 2d 263, 131 N. W. 2d 916. There was undisputed testimony that the bullet was fired at the south wall. Breckenridge testified that the hole in the south wall was in line with a path the bullet would necessarily follow to the point across the street where the bullet was recovered. It was stipulated that the bullet so recovered came from the gun of defendant and was the same bullet he fired into the south wall. Kieffer testified that the hole on the wall was not there prior to the night of the incident. The only logical conclusion is that the hole was caused by a shot fired from defendant's gun.

Appellant also argues as improper the prosecutor's statement to the court, in the presence of the jury, that he intended to have a photograph of the diagram to preserve it for the record. Appellant has directed this court to the case of *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. 2d 604, 106 N. W. 2d 274, where, during the final argument, plaintiff used a blackboard to display a suggested mathematical formula for computing damages for pain and suffering. The court found no objection to the use of the blackboard but held it was error to have it photographed in the presence of the jury because of the resulting undue emphasis on the demonstration. Here, however, the photograph was not taken in the presence of the jury. Furthermore, defense counsel failed to object to the statement by the prosecuting attorney, and in fact stipulated to the reception of the photograph in evidence.

*Courtroom use of measurements.*

During the trial, the district attorney caused Breckenridge to make marks on the courtroom wall at a height

of five feet, 11 inches, the height of Kieffer; and directly above, at a height of six feet nine inches, the height of the bullet hole. Another mark was made on the floor 26 feet three inches from the wall, to illustrate the distance from which the shot was fired. Defendant promptly objected to any measurements made in the courtroom. The objection was overruled. In response to the objection, and in the presence of the jury, the prosecuting attorney stated:

". . . I would just like to show to the jury how far away from the wall the defendant was at the time he fired the shot, where the shot went, and how much further down Mr. Kieffer was. I would propose to show that in the courtroom. . . ."

Appellant contends the statement was prejudicial error and placed the credibility of the prosecutor in issue.

There was no objection to the prosecutor's statement. Furthermore, it is apparent that the measurements and the statement were based on evidence which was already in the record. While there was some doubt as to exactly where Kieffer was when the shot was fired, there was testimony which would place him in the approximate area where the shot hit the wall. The jury was afforded a view of the actual premises and there was ample credible testimony with regard to the distances involved. The marks of measurements made were not made in the presence of the jury, nor were they photographed, nor offered in evidence. Under the circumstances, appellant has failed to demonstrate, and we cannot find, that the prosecutor's credibility was put in issue or that the measurement markings constituted a gross exaggeration.

### *The interest of justice.*

It has been stated many times that in order for this court to exercise its discretion and grant a new trial in

the interest of justice, alleged errors which occurred at trial must be such that if they would not have occurred, the defendant probably would have been acquitted. *See Zebrowski v. State, supra; Banks v. State* (1971), 51 Wis. 2d 145, 186 N. W. 2d 250. We are not convinced that justice has been miscarried in this case and that the defendant should not have been found guilty.

*By the Court.*—Judgment and order affirmed.