PER CURIAM.
¶1 M.D. Fisher appeals a judgment convicting him of attempted first-degree intentional homicide with use of a dangerous weapon, attempted armed robbery, first-degree reckless injury with use of a dangerous weapon, and unlawfully possessing a firearm as a previously convicted felon. Fisher argues that there was insufficient evidence to support the jury's verdict. We affirm.
¶2 We will affirm a conviction "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." State v. Poellinger , 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). The standard for reviewing a conviction based on circumstantial evidence is the same as the standard for reviewing a conviction based on direct evidence. Id. "[T]he trier of fact is the sole arbiter of the credibility of the witnesses and alone is charged with the duty of weighing the evidence." State v. Below , 2011 WI App 64, ¶4, 333 Wis. 2d 690, 799 N.W.2d 95. "When more than one inference can reasonably be drawn from the evidence, the inference which supports the trier of fact's verdict must be the one followed on review unless the evidence is incredible as a matter of law." Id.
¶3 The State's primary witness, Tameka Posey, testified that she has known Fisher for many years because Fisher's sister is her best friend. She testified that she and the victim, M.L., a man she had just met in person that day, went to meet Fisher at a duplex at Fisher's direction to discuss participation in a money-making bank scam. Posey testified that when they arrived, they went to the back door of the building and entered. They were in the back hallway when a man wearing a face mask came up the stairs from the basement. Posey testified that she immediately recognized the masked man as Fisher by his voice and the build of his body. She testified that her first thought was that Fisher was going to attempt to rob M.L. The masked man demanded M.L.'s money and the two men began to tussle. Posey testified that she saw Fisher pull out a gun so she ran from the scene. As she was running away, she heard five gun shots. Posey testified that she then began walking back to her house. She said that as she was walking Fisher drove up to her in a car, pulled over, and asked her to get in, which she refused to do. Posey said that Fisher drove away but returned a short while later with another man and told her to get in the car, which she again refused to do. Posey identified Fisher from a photo array two days later. Trial testimony established that M.L. was shot five times at close range, including in the chest and abdomen, and sustained catastrophic and permanent physical injuries as a result. Trial testimony also showed that the police found mail addressed to Fisher at the duplex, thus tying him to the location.
¶4 Fisher contends that the evidence was insufficient to support the convictions because there was no physical evidence linking him to the crimes. While it is accurate that there was no physical evidence, Posey's testimony linked Fisher to the crimes. The law does not require that a conviction be supported by physical evidence; in fact, mere circumstantial evidence is sufficient to support a conviction. See Poellinger , 153 Wis. 2d at 501. Posey's testimony and the testimony of other State witnesses, taken in the light most favorable to the State, was sufficient to support the verdict.
¶5 Fisher also argues that Posey's testimony was not believable. He contends that her claim that she did not know that there would be a robbery "does not ring true" and points out that in exchange for testifying against Fisher, she received concessions from the State for her role in the incident. As we previously explained, the jury "is the sole arbiter of the credibility of the witnesses[.]" Below , 333 Wis. 2d 690, ¶4. The jury was aware that Posey had been charged with armed robbery for her role and hoped to receive favorable treatment at sentencing for her testimony. The jury was also aware that Posey was a close friend of Fisher's sister, and had just met M.L., and thus could arguably have had a motivation to not implicate Fisher. Ultimately, it was up to the jury to decide whether and what to believe of Posey's testimony in light of these various considerations. Fisher's argument that Posey was not credible is not grounds for appellate relief.
¶6 Finally, Fisher contends that there was no evidence presented that the person who shot M.L. intended to commit first-degree intentional homicide. Intent to kill is one of the elements of attempted first-degree intentional homicide. See WIS. STAT. § 940.01 (2017-18). "Since the law cannot enter the subjective mind of an individual accused, intent must be evidence[d] by inferences from the words and conduct of the actor and the circumstances surrounding the act." See State v. Schenk , 53 Wis. 2d 327, 332, 193 N.W. 2d 26 (1972). "The general rule is that an accused is presumed to intend the natural and probable consequences of his acts, voluntarily and knowingly performed." Id. Trial evidence established that M.L. was shot at very close range five times, including shots to the chest and abdomen. Common sense dictates that shooting a person at close range five times in this manner will likely cause the person to die. From this evidence, the jury could have reasonably inferred that Fisher intended to kill M.L.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.