RANDOLPH, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–091–CR.  Argued April 5, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 334.)

632

For the plaintiff in error the cause was argued by *Ronald L. Brandt,* deputy state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. The principle issue in this case is whether the offense of injury by conduct regardless of life, sec. 940.23, Stats., is a lesser included offense of the crime of attempted first-degree murder, sec. 940.01 and sec. 939.32.

In the early morning hours of June 9, 1975, the defendant shot one Keith A. Plantz. He was nineteen years of age at the time, had played baseball during the afternoon of June 8, 1975, and went drinking beer in the evening. Late that night, he "decided to pick up a hooker." He drove to downtown Milwaukee, where he approached the defendant, who was a prostitute. They negotiated a price of $25 or $30; she got into his car; and they drove to her apartment.

The testimony of Plantz and the defendant is in conflict regarding what transpired in the defendant's apartment. Plantz testified at trial that he and the defendant went upstairs to her apartment and disrobed. He observed a scar on her abdomen, which she said was the result of a caesarean operation, and he said that it was ugly. She then asked for payment of the price they had negotiated. Plantz looked in his wallet and said "I only have $5.00." Plantz testified that the defendant did not appear to be greatly upset by his remark about her scar or about his lack of money, but that she told him to get dressed and leave. They both then dressed.

According to Plantz, as he finished dressing, the defendant rummaged in a dresser drawer and, in a single motion, withdrew a pistol, turned and shot him. The bullet went through his abdomen, hitting the colon, duodenum, spleen and bladder. Plantz would have died if he had not received prompt medical assistance.

The defendant's account of the shooting was substantially as follows: At about 2 a.m. on the morning of June 9, 1975, before she met Plantz, someone in a black car had followed her and a previous customer to her apartment. At about 2:30, after she returned downtown, she was approached by Plantz in what she recognized as the same black car. They negotiated a price of $30 for sexual intercourse, and she got into his car.

The defendant testified that while they were in the car, Plantz proposed a blackmail scheme in which he would follow her "tricks," obtain the license numbers of their automobiles, and blackmail them. Plantz said that he had engaged in blackmail before and that he had followed her previous "trick" and had his license number. She told him she was not interested in blackmail, but that if he wanted to engage in sex, he should take her to her apartment.

They went to her apartment and disrobed. The defendant testified that Plantz then said he only wanted to talk, and again began talking about blackmail. She said that she told him she was not interested in blackmail, and that if he did not want to have sexual relations, he should leave. She further testified that he told her a stretch mark on her abdomen was ugly and also told her that he only had five dollars. She then told him to leave, and he dressed and started down the stairs.

According to the defendant, Plantz then came back into the room, pushed her backwards onto the bed and said he was going to have intercourse with her. The defendant said she threatened to call for her boyfriend, who was not really in the building, and Plantz allegedly told her to go ahead. She said she then struggled free of Plantz, and he went to the door and blocked it.

She then went to the dresser, withdrew a pistol and cocked it to frighten him into leaving. He chuckled, asked whether the gun was real, and came toward her, reaching for the gun. She backed up and as she did, stumbled "just a little" on the shag carpet, and the gun went off.

The testimony of Plantz and the defendant was in substantial agreement as to what happened after Plantz was shot. The defendant screamed. Plantz ran down the stairs and outside to his car. The defendant followed, asking him how badly he was hurt and whether he knew where he was. He drove away without answering, traveled about two blocks, got out of his car to seek assistance and fell onto the street. He was found immediately and taken to a hospital where he underwent surgery and spent five weeks recovering.

The defendant testified that when Plantz drove away she telephoned a girlfriend who lived nearby and that the friend came over to her apartment. The parties stipulated that the resident of the downstairs apartment,

who was unavailable at the time of trial, would have testified that he heard an automobile pull away and then heard two women go up the stairs and heard one of them say, "I shot him. I shot him. I didn't mean to shoot him."

Plantz told the police a number of versions of the shooting. When he was found in the street, he told the police he had been shot by a black man in a tavern. Asked where the tavern was, he answered only with an obscenity. He later told police three black men had gotten into his car, had tried to rob him and had then shot him. Still later he said that two men and a woman had tried to rob him. He gave police descriptions of the purported robbers.

Several days after the shooting, when it appeared that Plantz might die, he talked with a minister who urged him to tell the truth. He then told police that he had been shot by a prostitute, but that the shooting had occurred in his car in an alleyway. Sometime thereafter he told the version of the shooting reflected in his trial testimony. He had fabricated the earlier stories, he testified, to keep the truth from his wife.

The defendant was arrested approximately three weeks after the shooting. She testified that she had not turned herself in because she had to arrange for her three young children to be cared for. She was charged with attempted first-degree murder, contrary to secs. 940.01 and 939.32, Stats.

After the closing arguments of counsel at the conclusion of the trial, the trial court, over the objection of defense counsel, instructed the jury on the offense of injury by conduct regardless of life, contrary to sec. 940.23, Stats., as a lesser included offense of attempted first-degree murder.

On this review the defendant argues that the trial court erred (1) in instructing the jury that injury by

conduct regardless of life is a lesser included offense of attempted murder, and (2) in refusing to instruct the jury with regard to the offenses of reckless use of a weapon and injury by negligent use of a weapon; and further argues that the evidence does not support the verdict and the judgment of conviction.

The state argues that the defendant has waived the right to assert that the trial court erred when it instructed the jury that injury by conduct regardless of life, contrary to sec. 940.23, Stats., was a lesser included offense of attempted first-degree murder because the defendant did not make proper objection at the trial.

It is well established that an error in jury instructions may be reviewed on appeal, even where there was no timely objection in the trial court, when the error is so plain or fundamental as to affect the substantial rights of the defendant. *Claybrooks v. State,* 50 Wis.2d 79, 84, 85, 183 N.W.2d 139 (1971). Further, this court has held that an objection to jury instructions will not be waived when the instruction misstates the law, rather than being simply imperfect or incomplete. *Lambert v. State,* 73 Wis.2d 590, 243 N.W.2d 524 (1976).

In the instant case, the trial court instructed the jury that ". . . injury by conduct regardless of life in violation of Section 940.23 of the Criminal Code of Wisconsin . . . is a lesser included offense under the offense charged in the Information." If this statement is erroneous as a matter of law, then the instructions have both misstated the law and affected the substantial rights of the defendant. We therefore reach the merits of the issue.

The parties agree that the instructions of the trial court were proper only if the lesser offense was an included offense within the greater. A trial court may not

instruct or submit a verdict on a lesser *not* included offense. *Clark v. State,* 62 Wis.2d 194, 205, 214 N.W.2d 450 (1974).

Lesser included offenses are defined by sec. 939.66, Stats., which provides:

*"939.66 Conviction of included crime permitted.* Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

*"(1)* A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

*"(2)* A crime which is a less serious type of criminal homicide than the one charged; or

*"(3)* A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

*"(4)* An attempt in violation of s. 939.32 to commit the crime charged; or

*"(5)* The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them."

It is not entirely clear from the record which subsection of this statute the trial court relied upon in determining that injury by conduct regardless of life was a lesser included offense of attempted first-degree murder.

It appears the trial court was of the opinion that the instruction was appropriate under subsection (3) of sec. 939.66, Stats. However, we reach the opposite conclusion. The lesser crime in question here does not require "recklessness or negligence," but rather requires that the defendant's conduct evince "a depraved mind, regardless of human life," sec. 940.23. The "depraved mind" standard is distinct from, and is not a species of, recklessness or negligence. *See: State v. Weso,* 60 Wis.2d 404, 407–412, 210 N.W.2d 442 (1973). "To constitute a

depraved mind, more than a high degree of negligence or recklessness must exist. . . ." *State v. Weso, supra,* at 411.

In addition, sec. 939.66(3), Stats., applies only where, except for the elements of criminal intent, the lesser crime is "the same as the crime charged. . . ." As will be discussed hereinafter, the lesser offense here involves an additional element not contained within the charged offense. For this reason, the two crimes cannot be said to be "the same" except for the element of criminal intent, and sec. 939.66(3) is therefore inapplicable.

Subsections (4) and (5) of sec. 939.66, Stats., plainly have no application to this case. Subsection (2) is also inapplicable because injury by conduct regardless of life is not a "type of criminal homicide."

Nor is sec. 939.66(1), Stats., applicable here. An included crime under that subsection is "A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . ." Injury by conduct regardless of life requires proof of facts in addition to those required for attempted murder.

In determining whether one crime is a lesser included offense of another, this court is concerned only with the legal elements of the crimes, and not with the particular facts established in the case at hand. ". . . [T]he test for a lesser included offense is not the peculiar nature of a single defendant's crime, rather it is whether the lesser offense is statutorily within the greater." *State v. Smith,* 55 Wis.2d 304, 310, 198 N.W.2d 630 (1972); *accord: Geitner v. State,* 59 Wis.2d 128, 207 N.W.2d 837 (1973); *see also: State v. Chacon,* 50 Wis.2d 73, 183 N.W.2d 84 (1971).

The greater offense in the instant case, attempted murder, has two elements: ". . . (1) A specific intent

to take the life of another human being; and (2) an unequivocal act which, except for the intervention of some extraneous factor, would have resulted in the death of that individual. . . ." *State v. Schenk,* 53 Wis.2d 327, 332, 193 N.W.2d 26 (1972).

The statute defining injury by conduct regardless of life provides:

"*940.23 Injury by conduct regardless of life.* Whoever causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not more than 10 years."

The elements of this offense are: (1) That the victim's injuries amounted to great bodily harm; (2) that the defendant's conduct was imminently dangerous to another; (3) that his conduct was of such a character that it evinces a depraved mind regardless of human life; and (4) that there was a relation of cause and effect between the victim's injuries and the defendant's conduct imminently dangerous to another and evincing a depraved mind, regardless of human life.

This offense thus requires a showing that the victim sustained injuries amounting to great bodily harm. This element is not required for the offense of attempted murder. *See, e.g., State v. Damms,* 9 Wis.2d 183, 100 N.W.2d 592 (1960) (attempted murder by shooting of a gun which proved to be unloaded), *Nelson v. State,* 53 Wis.2d 469, 193 N.W.2d 5 (1972), and *State v. Schenk, supra* (where defendants fired guns at intended victims, but missed). Because injury by conduct regardless of life requires proof of a fact, *i.e., injury,* in addition to those which must be proved for attempted murder, the former offense cannot be a lesser included offense within the latter.

The state suggests that the conviction may be upheld by an analysis which looks not only at the statutory elements of the crimes in question, but also at the facts of a given case. Because the alleged attempted murder in the instant case involved an injury amounting to great bodily harm, the state proposes that injury by conduct regardless of life be considered a lesser included offense of attempted murder in this particular case. We are not persuaded by this argument. This court has twice explicitly rejected such an approach. *See: State v. Smith, supra; Geitner v. State, supra.*

This court did observe in *Martin v. State,* 57 Wis.2d 499, 506, 204 N.W.2d 499 (1973), that under sec. 939.66 (1), Stats., "the emphasis is on the proof, not the pleading." This does not mean that the lesser offense need not be statutorily included within the greater. The quoted statement was made in rejecting the contention that the lesser offense must be alleged in the information in words separable from those charging the greater offense.

*Martin v. State, supra,* stands for the proposition that the test for a lesser included offense is concerned, not with the language of the pleading, but with the facts which the state is statutorily required to prove to establish the lesser and greater offenses. In *Geitner v. State, supra,* decided after *Martin v. State, supra,* this court reaffirmed that the peculiar facts of a given case are irrelevant to the identification of lesser included offenses.

The state cites *State v. Melvin,* 49 Wis.2d 246, 181 N.W.2d 490 (1970), in which this court held that reckless use of a weapon, contrary to sec. 941.20 (1) (a) and (c), Stats., was a lesser included crime within attempted murder. The lesser offense recognized in *Melvin, supra,* required the use of a weapon, and that element was not necessary to the crime of attempted murder. However,

this approach was rejected by this court in *State v. Smith, supra,* and *Geitner v. State, supra,* both decided after *Melvin* and both of which discuss the *Melvin Case.* In *State v. Smith, supra, at* 310, this court observed that if resort to the unique facts of each case were permissible,

".  .  . armed robbery would become a lesser included offense of homicide when a death was involved in an armed robbery and pointing a firearm would be a lesser included offense of rape should the assailant choose to use such a weapon.  .  .  ."

Instead of such an approach, this court held, "the test .  .  . is whether the lesser offense is statutorily within the greater." *State v. Smith, supra,* at 310. The holding in *Melvin, supra,* that reckless use of a weapon may be a lesser included offense of attempted murder, is contrary to this principle and has not been recognized in subsequent cases as the law of this state.

Our attention is also directed to *State v. Carter,* 44 Wis.2d 151, 170 N.W.2d 681 (1969), which involved the two offenses in question here. In *Carter, supra,* at 156, this court upheld a trial court's refusal to instruct a jury on injury by conduct regardless of life because in that case ".  .  . there was sufficient evidence to support the conviction of attempted first-degree murder.  .  .  ." The state argues that there is implicit in this holding a determination that the lesser crime was included within the greater. We find nothing in *Carter, supra,* to indicate such a determination.

For a trial court to instruct a jury on a lesser offense, it must appear not only that the statutory elements of the lesser offense are included within the charged offense, but also that a reasonable view of the evidence adduced would support conviction of the lesser offense while leaving reasonable doubt as to the defendant's guilt

of the greater offense. *Geitner, supra.* This court's holding in *Carter, supra,* was founded solely on the failure of the defendant to meet the second of these requirements. *Carter, supra,* is not authority for rejection of the express rule of *Geitner, supra,* and *State v. Smith, supra.*

We conclude that the trial court erred in instructing the jury with regard to injury by conduct regardless of life. Procedural due process requires that a defendant have notice of a specific charge and an opportunity to be heard in trial of the issues raised by that charge. *Geitner v. State, supra,* at 133. It is for this reason that a trial court may not instruct a jury with regard to an offense which is not included in the charged offense. The judgment of conviction must therefore be reversed and the cause remanded for a new trial.

The defendant further contends that the trial court erred in refusing to instruct the jury on the offenses of reckless use of a weapon, contrary to sec. 941.20, Stats., and injury by negligent use of a weapon, contrary to sec. 940.24, as lesser included offenses.

We are of the opinion that the crimes on which the defendant asked instructions are not included within the crime of attempted murder, and that the trial court was therefore correct in refusing to give the requested instructions.

The defendant relies on *State v. Melvin, supra.* There, as previously stated, this court held that reckless use of a weapon under sec. 941.20 (1) (a) and (c), Stats., was a lesser included crime of attempted murder. This holding was in error, is incompatible with the test set forth in *State v. Smith, supra,* and *Geitner v. State, supra,* and has not been followed in subsequent cases.

It cannot be said that reckless use of a weapon "does not require proof of any fact in addition to those which

must be proved for" attempted murder, sec. 939.66(1), Stats., nor is the former offense "the same as" the latter except for the element of criminal intent, sec. 939.66(3). The crime of reckless use of a weapon requires the presence and use of a weapon. No weapon is required to commit the crime of attempted murder. Because a weapon is not statutorily necessary for attempted murder, reckless use of a weapon is not a lesser included offense of that crime.

The defendant argues that the trial court should have considered the fact that a weapon was in fact used in the case at bar. The defendant asserts that the firing of a gun was proven in the present case as one of the essential elements of attempted first-degree murder; *i.e.,* as "an unequivocal act which, except for the intervention of an extraneous factor," would have resulted in the death of a human being. *State v. Schenk, supra,* at 332. The defendant maintains that because such an unequivocal act is an essential element of attempted murder, and since the act in this case was the firing of a weapon, the crime of reckless use of a weapon does not in this case "require proof of any fact in addition to those which must be proved for the crime charged. . . ." Sec. 939.66(1), Stats.

This argument misconceives the test for the existence of a lesser included offense. As the defendant correctly states, the question is "whether the two statutes mesh together sufficiently such that, without considering any additional elements, the greater can be reduced to the lesser. . . ." The rule consistently applied by this court is that, for one crime to be included in another, it must be " 'utterly impossible' " to commit the greater crime without committing the lesser. *State v. Smith, supra,* at 310. Plainly, it is not impossible to attempt murder without recklessly using a weapon.

The holding in *State v. Smith, supra,* illustrates this point. There, the defendant had been charged with armed robbery, contrary to sec. 943.32, Stats. An essential element of that crime is the use of force or a threat of the imminent use of force, sec. 943.32(1), and that element had been supplied, in that case, by the pointing of a gun. The defendant there argued that because the essential element had been supplied in that case by the pointing of a gun, the offense of intentionally pointing a firearm, contrary to sec. 941.20(1) (c), was a lesser included offense of armed robbery in that case.

This court rejected that argument, and said:

". . . Armed robbery does not require the pointing of a gun and thus the latter is not a lesser included offense. The fact that in the present case the defendant did actually point the gun is irrelevant. The requirement is those facts which are required to be proven, not those facts which might be proven in addition to those required by the statute." *State v. Smith, supra,* at 310.

Similarly, reckless use of a weapon is not required to be proven to show attempted murder.

The same reasoning is applicable with regard to the offense of injury by negligent use of a weapon. Because this offense also requires evidence of a weapon, it cannot be a lesser included offense of attempted murder. Moreover, injury by negligent use of a weapon has another element not present in the charged offense, namely, the element of injury. We have held that the presence of this additional element prevents the crime of injury by conduct regardless of life from being included within attempted murder. The same reasoning is applicable to injury by negligent use of a weapon.

The trial court did not err in refusing to instruct the jury on the offenses of reckless use of a weapon and injury by negligent use of a weapon.

The defendant finally contends that the evidence was insufficient to sustain the verdict of the jury. Because of our disposition of the case, we do not consider this issue.

We are obliged to reverse the judgment of conviction and the sentence imposed upon the charge of injury by conduct regardless of life and the order denying the defendant's motion for a new trial.

*By the Court.*—Judgment and order reversed, and cause remanded with directions to grant defendant's motion for a new trial.