Michael HAWTHORNE, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.

Supreme Court

*No. 78-806-CR. Argued October 1, 1980.—Decided January 6, 1981.*

(Also reported in 299 N.W.2d 866.)

For the plaintiff in error-petitioner the cause was argued by *William J. Tyroler,* assistant state public defender, with whom on the briefs was *Richard L. Cates,* state public defender.

For the defendant in error the cause was argued by *Chris C. Heikenen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

DAY, J. This is a review of an unpublished decision of the Court of Appeals dated April 23, 1979, affirming a judgment of conviction entered by the Circuit Court for Milwaukee County, HON. VICTOR MANIAN, Circuit Judge.

The single question presented in this case is: Did the trial court err in denying defendant's request for submission of a verdict of endangering safety by conduct regardless of life[1] (endangering safety) as a lesser included offense of attempted first-degree murder.[2]

---

[1] Sec. 941.30, Stats. 1975. **"Endangering safety by conduct regardless of life.** Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be fined not more than $1,000 or imprisoned not more than 5 years or both." Amended L. 1977, c. 173, sec. 40, effective June 1, 1978.

[2] Sec. 940.01, Stats. 1975. **"First-degree murder.** (1) Whoever causes the death of another human being with intent to kill that person or another shall be sentenced to life imprisonment.

"(2) In this chapter 'intent to kill' means the mental purpose to take the life of another human being." Amended L. 1977, c. 173, sec. 5, effective June 1, 1978.

"939.32. **Attempt.** (1) Whoever attempts to commit a felony or a battery as defined by s. 940.20 or theft as defined by s. 943.30 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; except that for an attempt to commit a crime for which the penalty is life im-

We hold that the refusal to submit the verdict was prejudicial error, reverse the Court of Appeals' decision upholding the trial court, and remand for a new trial.

The charges against Michael Hawthorne (defendant) arose out of his activities in the early morning hours of June 14, 1976, at a tavern in Milwaukee.

Defendant entered the tavern about 9 p.m. and was approached by Zachery Jenkins who asked him to shoot dice. According to Jenkins, defendant responded by calling him a vulgar name and the two men argued, then went outside and fought. According to the defendant, when asked to shoot dice, he told Jenkins he did not want to, but the two agreed to play pool betting twenty dollars on the outcome of the game. Defendant testified that he won the game and picked up the twenty dollars from the edge of the pool table, but that Jenkins protested and grabbed the money from him. They argued and then went outside to fight.

Jenkins gained the upper hand in the fight and held the defendant to the ground. Jenkins and the bartender, Cliffie Elliott, testified that Jenkins repeatedly told defendant he did not want to fight. Defendant denied that. After the fight, Jenkins returned to the bar and the defendant left.

The defendant testified that he drove around for forty-five minutes and then returned. He then removed his

prisonment, the actor may be imprisoned not more than 30 years. Whoever attempts to commit a battery as defined in s. 940.205 may be imprisoned not more than one year in the county jail.

"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor." Amended L. 1977, c. 173, sec. 2, effective June 1, 1978.

shotgun from the trunk of his car, loaded it, and entered the tavern.

When defendant entered the tavern, Jenkins was at the pool table furthest from the entrance. The bartender, Cliffie Elliott, testified that she yelled, "he got a gun" when she saw defendant with the shotgun, that he walked to the door to the back room of the bar, yelled "freeze" and shot Jenkins.

According to defendant, after he had ample opportunity to shoot Jenkins he yelled "freeze." He testified that his sole intention was to recover the twenty dollars taken by Jenkins after the pool game. He saw Jenkins jump over the pool table and stick his arm out from under the table holding a pistol. Seeing Jenkins' pistol, defendant said he aimed and shot at Jenkins' arm. After the shooting, defendant left the bar.

Jenkins testified that prior to the shooting he played dice with other patrons. Standing in front of the pool table, he heard someone say, "he got a gun." Others tried to get out of the way. He turned, saw the defendant holding a shotgun at shoulder level about eight or nine feet away, heard a shot and felt pain in his right arm. His body was turned by the force of the shot and he fell against the pool table. He denied getting under the pool table and denied having a gun.

Only the defendant testified that Jenkins had a gun, however, Roger Robbins, a patron of the tavern, testified that he dived under the pool table after he heard a voice shout "freeze" and that he saw a pistol on the floor after the shooting. Robbins did not know whose pistol it was or how it got there.

Cliffie Elliott, the bartender, also stated that Jenkins fell on the pool table. Elton Harding was seated in the back room when the defendant entered with his shotgun. Harding testified the victim went over the table and then under it. He heard defendant say, "hold it," and

believed that the defendant was pointing his gun downward at Jenkins who was on the floor when the defendant shot. Harding also heard a second shot, but did not see it fired because he was pulled backward into a toilet by a friend.

Officer Dennis Perl arrived at the scene at 1:45 a.m. He found a spent twelve gauge cartridge shell on the floor near the pool table in the back room. He measured the pattern of shotgun pellets on the far wall, and found it extended from approximately three to six feet off the floor.

The court submitted two verdicts to the jury: (1) guilty of attempted first-degree murder, and (2) not guilty. They were also instructed, at the request of the defendant, on the privilege of self-defense.[3] The trial court denied defendant's request for an alternative verdict of endangering safety. The trial court said:

"Defendant is claiming that he fired at the arm of the victim in self-defense, and that is all he claims. It seems to me that that defense is inconsistent with endangering safety by conduct regardless of life."

The jury returned a verdict of guilty of attempted first-degree murder. The judgment of conviction was entered on March 11, 1977. Defendant was sentenced to an indeterminate prison term of not more than twenty-five years. Post-conviction motions were denied on June 14, 1977.

The defendant brought writs of error alleging that his rights to due process and trial by jury had been denied by the court's refusal to submit the lesser offense of endangering safety. Defendant also challenged the admission at trial of "other crimes" evidence.

The Court of Appeals, in an unpublished decision, dated April 23, 1979, held that the other crimes evidence

---

[3] Wis J I—805, 815–CR.

was improperly admitted, but that its admission was harmless error.[4]

On the lesser offense question the Court of Appeals held that endangering safety includes an element not required to convict for attempted murder, to wit, endangering safety, and therefore, it is not a lesser included offense of that crime.

On review, this court in a *per curiam* opinion dated June 29, 1979, held that endangering safety is a lesser included crime of attempted first-degree murder and vacated that portion of the Court of Appeals decision that held to the contrary. We remanded the case to the Court of Appeals to consider "whether the evidence would reasonably have permitted acquittal of plaintiff in error on the charge of attempted first-degree murder and conviction on the lesser included offense of endangering safety by conduct regardless of life." On remand, the Court of Appeals held that the evidence would not reasonably permit acquittal of the defendant on the charge of attempted first-degree murder and again affirmed the trial court. We granted review of that decision.

Oral argument was heard on this case and *Walker v. State*, 99 Wis.2d 687, 299 N.W.2d 861 (1981), and the cases were decided together with *Cartagena v. State*, 99 Wis.2d 657, 299 N.W.2d 872 (1981), also mandated this date. In each of these cases, the defendant was charged with attempted first-degree murder, claimed the privilege of self-defense and requested submission to the jury of the lesser offense of endangering safety which was denied.

After oral arguments were heard, this court ordered the parties to submit supplemental briefs restricted to the question: Is endangering safety a lesser included offense of attempted first-degree murder, consistent with

---

[4] On April 8, 1980, this court granted the State's motion to limit review to the lesser included offense issue.

our opinion in *Randolph v. State,* 83 Wis.2d 630, 266 N.W.2d 334 (1978)?

The first question in determining the submission of a lesser offense is whether that offense is an included crime of the charged offense. A trial court may not submit a verdict on a lesser but not included offense. *Clark v. State,* 62 Wis.2d 194, 205, 214 N.W.2d 450 (1974).

Because the Court of Appeals originally held that, under the "elements only" test reaffirmed in *Randolph, supra,* endangering safety is not a lesser included offense of attempted murder, we deem it appropriate to first discuss that issue.

In *Randolph* we held that *injury* by conduct regardless of life[5] is not a lesser included offense of attempted first-degree murder.

The submission of lesser included crimes is governed by sec. 939.66, Stats. 1977, which provides:

"**939.66. Conviction of included crime permitted.** Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; or

"(2) A crime which is a less serious type of criminal homicide than the one charged; or

"(3) A crime which is the same as the crime charged except that it requires recklessness or negligence while the crime charged requires a criminal intent; or

"(4) An attempt in violation of s. 939.32 to commit the crime charged; or

"(5) The crime of attempted battery when the crime charged is rape, robbery, mayhem or aggravated battery or an attempt to commit any of them."

In *Randolph,* we observed that subsection (3) above cannot apply to a crime requiring that defendant's con-

---

[5] Sec. 940.23, Stats.

duct "evince a depraved mind regardless of human life," such as endangering safety, because "the depraved mind standard is distinct from, and is not a species of, recklessness or negligence. See, *State v. Weso,* 60 Wis.2d 404, 407–412, 210 N.W.2d 442 (1973)." *Randolph,* 83 Wis.2d at 639.

Subsections (2), (4) and (5) are inapplicable by their own terms.

In *Randolph,* we held that sec. 939.66 (1), was also inapplicable, because injury is an additional element not required for the offense of attempted murder. *Randolph,* 83 Wis.2d at 641.

Based on this reasoning, the Court of Appeals held that "endangering safety" is also an element not required for the offense of attempted murder and therefore, endangering safety is not a lesser included offense of attempted murder. We rejected this view in our earlier *per curiam* decision in the review of the original Court of Appeals decision, and we reaffirm that conclusion now.

Attempted first-degree murder requires proof of two elements:

". . . (1) A specific intent to take the life of another human being; and

"(2) an unequivocal act which, except for the intervention of some extraneous factor, would have resulted in the death of that individual . . ." *State v. Schenk,* 53 Wis.2d 327, 332, 193 N.W.2d 26 (1972).

Endangering safety by conduct regardless of life has three elements:

"(1) The defendant's conduct was imminently dangerous to another, (2) the defendant's conduct evinced a depraved mind, regardless of human life, and (3) the safety of another was actually endangered by the defendant's conduct." *State v. Kuta,* 68 Wis.2d 641, 644, 229 N.W.2d 580 (1975).

Under the *Randolph* test, the question is: To establish the three elements of endangering safety, must the

state prove any fact not required to establish the elements of attempted first-degree murder?

This court has previously held that "conduct evincing a depraved mind" is present in first-degree murder and that the intent is the same except for the absence of the design to effect death. *Holmes v. State,* 63 Wis.2d 389, 399, 217 N.W.2d 657 (1974); *State v. Dolan,* 44 Wis.2d 68, 73, 170 N.W.2d 822 (1969).

Both the elements of "imminently dangerous" and "endangering safety"[6] are included in the element of attempted first-degree murder of "an unequivocal act which, except for the intervention of some extraneous force would have resulted in death of another."[7]

As this court observed in our earlier *per curiam* decision in this case: "Logically, an unequivocal act which, but for the intervention of some extraneous factors, would have resulted in the death of the victim, endangers the safety of the victim." We further conclude that such an act must of necessity be "imminently dangerous."

The conclusion that endangering safety is a lesser included offense of attempted first-degree murder is supported by longstanding precedent in this court. *Holmes v. State,* 63 Wis.2d 389, 399, 217 N.W.2d 657 (1974); *Thomas v. State,* 53 Wis.2d 483, 192 N.W.2d 864 (1972); *Holesome v. State,* 40 Wis.2d 95, 161 N.W.2d 283 (1968). *See also, Walker v. State,* 92 Wis.2d 690, 692–693, 286 N.W.2d 2 (Ct. App. 1979).

Submission of a lesser included offense is proper *only* when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense. *Jordan v. State,* 93 Wis.2d 449, 468, 287 N.W.2d 509 (1980).

---

[6] Sec. 941.30, Stats. 1977.

[7] *State v. Schenk,* 53 Wis.2d at 332.

The rule was stated in detail in *State v. Bergenthal,* 47 Wis.2d 668, 674–675, 178 N.W.2d 16 (1970), *cert. denied,* 402 U.S. 972 (1971), where this court stated:

". . . if the evidence, in one reasonable view, would suffice to prove guilt of the higher degree beyond a reasonable doubt, and if, under a different, but reasonable view, the evidence would suffice to prove guilt of the lower degree beyond a reasonable doubt, but leave a reasonable doubt as to some element included in the higher degree but not in the lower, the court should, if requested, submit the lower degree as well as the higher. . . ." [citing *Zenou v. State,* 4 Wis.2d 655, 668, 91 N.W.2d 208 (1958)].

"The key word in the rule is 'reasonable.' The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if 'under a different, but reasonable view,' the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury. However, there is not to be read into the rule the requirement that 'there are not reasonable grounds on the evidence to convict of the greater offense.' That goes too far. Where the defendant is able to demonstrate that there is no reasonable view of the evidence that warrants conviction on the greater offense, and the trial court agrees, there remains no issue on such charge to go to the jury. The purpose of multiple verdicts is to cover situations where under different, but reasonable, views of the evidence there are grounds either for conviction of the greater or of the lesser offense. The lesser degree verdict is not to be submitted to the jury unless there exists reasonable grounds for conviction of the lesser offense and acquittal on the greater."

■

The evidence supporting submission must be "relevant and appreciable." *Johnson v. State,* 85 Wis.2d 22, 31, 270 N.W.2d 153 (1978). In applying this test, the evidence is to be reviewed in the light most favorable to

the defendant. *Garcia v. State,* 73 Wis.2d 174, 186, 242 N.W.2d 919 (1976).

To protect the defendant from violation of due process or denial of the right to trial by jury, this court has held that neither the trial court nor the appellate court may look to the totality of the evidence. The question is rather:

". . . whether a reasonable construction of the evidence will support the defendant's theory viewed in the most favorable light it will 'reasonably admit of from the standpoint of the accused.' *Ross v. State, supra.* If this question is answered affirmatively, then it is for the jury, not for the trial court or this court, to determine whether to believe defendant's version of events." *State v. Mendoza,* 80 Wis.2d 122, 153, 258 N.W.2d 260 (1977).

■

If the court improperly fails to submit the requested lesser included offense to the jury, it is prejudicial error and a new trial must be ordered. *Mendoza,* 80 Wis.2d at 155–156.

The defendant denied that he intended to kill Jenkins, although he did admit shooting him. On direct examination, the defendant testified concerning the shooting as follows:

"*Q.* What did you aim at?
"*A.* His arm.
"*Q.* Why?
"*A.* Because I didn't want to kill him, I didn't have any intention on going in there to kill him.
"*Q.* What was your reason for going back [to the tavern]?
"*A.* To get my money back from him. That was all."

In *Brook v. State,* 21 Wis.2d 32, 43, 123 N.W.2d 535 (1963), this court upheld the trial court's refusal to submit a verdict of second-degree murder in a prosecu-

tion of first-degree murder, although the defendant had denied intent to kill. The court said:

"Based upon defendant's testimony alone, without considering the conflicting physical facts brought out by the state's witnesses, there would appear to be a reasonable basis for the jury's finding defendant guilty of second-degree murder. Therefore, the issue, of whether it was prejudicial error not to have submitted second-degree murder, boils down to whether the physical facts brought out by the state, as summarized in the statement-of-facts portion of this opinion, contradicts defendant's testimony so as to leave no reasonable basis for a finding of second-degree murder." *Brook*, 21 Wis. 2d at 43–44.

There, this court reviewed the physical facts and found them to render defendant's testimony "unbelievable."

In this case, the Court of Appeals noted evidence that the pattern of shot from defendant's shotgun left marks on the rear wall of the tavern from three to six feet above the floor. The court concluded that "this physical evidence clearly contradicts the defendant's assertion that he fired in self-defense at the victim who was on the floor under the pool table."

While this physical evidence may render incredible defendant's claim that he shot Jenkins under the pool table in the exercise of self-defense, it is not inconsistent with defendant's claim that he intended to shoot Jenkins in the arm and did not intend to kill him.

In addition to defendant's testimony, there was other evidence supporting his claimed lack of intent to kill.

The placement of the shot in Jenkins' upper arm tends to support lack of intent to kill. In *Terrell v. State,* 92 Wis.2d 470, 285 N.W.2d 601 (1979), this court upheld a second-degree murder conviction where the defendant claimed there was no evidence to negate intent to kill, and therefore the second-degree murder verdict should not have been submitted.

Affirming the conviction, we observed:

"The evidence also shows that Cobb was shot in widely separate parts of his body, a fact which could reasonably demonstrate to the jury that Terrell did not aim at vital portions of Cobbs' body with the specific intent to kill. The evidence of the police officer who investigated at the scene also indicates that some shots struck the wall and did not hit Cobbs. Under one reasonable view, this evidence demonstrates that Terrell's conduct was imminently dangerous and evinced a depraved mind regardless of human life. Under that view, it could also be reasonably said that the evidence negated the specific intent to kill." *Terrell*, 92 Wis.2d at 603.

The evidence here shows that Jenkins was shot in a non-vital area. This evidence both supports defendant's contention that he aimed at Jenkins' arm and that he did not intend to kill Jenkins.

Based on the evidence, the jury could and did reject the defendant's claim that he acted in self-defense. In one view the jury could, as it did, find defendant guilty of attempted first-degree murder. But in a second and reasonable view, the jury could have found that the defendant shot Jenkins only to injure him and without the specific intent to kill. In that view, the defendant's acts clearly constitute the crime of endangering safety.

■

A claim of self-defense does not necessarily preclude submission of endangering safety. The jury may reject a defendant's claim of self-defense and still find the defendant lacked intent to kill.

Applying the proper test, there were reasonable grounds in the evidence to acquit defendant of attempted first-degree murder and convict him of endangering safety. The conflicting evidence should properly have been considered and weighed by the jury.

■

In this case, the trial court erred in denying the de-

fendant's requested submission of the lesser included offense of endangering safety.

*By the Court.*—The decision of the Court of Appeals is reversed and the cause remanded to the Circuit Court for Milwaukee County for a new trial.