STATE of Wisconsin, Plaintiff-Respondent,

v.

Gerald L. WEEKS, Defendant-Appellant.

Court of Appeals

*No. 91–0103–CR. Submitted on briefs July 2, 1991.—Decided October 22, 1991.*

(Also reported in 477 N.W.2d 642.)

For defendant-appellant the cause was submitted on the briefs of *Donna L. Hintze,* assistant state public defender, of Milwaukee.

For plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Thomas J. Balistreri,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. The defendant was found guilty by a jury of two counts of armed robbery, sec. 943.32(1)(b) and (2), Stats., and one count of attempted[1] first-degree

---

[1]Section 939.32(3), Stats., defines attempt as follows:

> **(3)** An attempt to commit a crime requires that the actor have

intentional homicide, secs. 940.01(1), Stats.[2] All three counts were charged as party to a crime pursuant to sec. 939.05, Stats. The defendant does not challenge the convictions for armed robbery. The defendant's sole argument on appeal is that the trial court committed prejudicial error when it denied his request to instruct the jury on first-degree recklessly endangering safety, secs. 941.30(1) and 939.24(1), Stats.[3] We disagree and affirm.

an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

[2] Section 940.01(1), Stats., states:

**First-degree intentional homicide. (1)** OFFENSE. Except as provided in sub. (2), whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

Relevant to sec. 940.01(1), Stats., is sec. 939.23(4), Stats. on criminal intent, which provides:

**(4)** "With intent to" or "with intent that" means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result.

[3] The relevant portions of these statutes are as follows:

**941.30 Reckless endangering safety. (1)** FIRST-DEGREE RECKLESSLY ENDANGERING SAFETY. Whoever recklessly endangers another's safety under circumstances which show utter disregard for human life is guilty of a Class D felony.

**939.24 Criminal recklessness. (1)** In this section, "criminal recklessness" means that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk.

**(2)** If criminal recklessness is an element of a crime in chs. 939 to 951, the recklessness is indicated by the term "reckless" or "recklessly."

## FACTS

On August 20, 1989, Gerald L. Weeks, the defendant, along with several accomplices, robbed a tavern called the Hi-Lo Club. According to the record, three men entered the tavern: one man went behind the bar and ordered the bartender to open the cash register; the second man, carrying a shotgun, stood by the tavern's outside entrance; and the third man stood by the jukebox with a sawed-off shotgun. Weeks waited at an automobile outside the tavern with a fifth accomplice.

The owners of the tavern, Harvey Schmidt and his wife Sylvia, were in the living quarters adjacent to the tavern at the time of the robbery. After hearing the commotion, Harvey Schmidt went into the tavern to investigate. He closed the door connecting the living quarters and the tavern behind him. Harvey Schmidt was first ordered by one of the robbers to raise his hands and then was told to cover his eyes. When he did not comply quickly enough, the man near the jukebox covered Harvey Schmidt's eyes with his own hands. This man stepped back when the man at the door said, "We better get out of here." Harvey Schmidt testified that he then heard his wife open the adjoining door. He testified that she saw what was happening and slammed the door very quickly. The door closed just as the man near the jukebox turned and shot through the midsection of the door. The robbers then fled in the car waiting outside.

Sylvia Schmidt testified that she was on the phone when she and her husband first heard the noise in the tavern and when he went to investigate the commotion. She later hung up the phone and opened the connecting door between the tavern and apartment. She testified that when she opened the door, she saw her husband five to six feet in front of her, a man behind the register, and

204

another man at the jukebox with a sawed-off shotgun pointed at her husband. She stated that when the man with the sawed-off shotgun turned toward her, she slammed the door. He shot through the door, and pellets and wood splinters struck Sylvia Schmidt in the upper thigh, abdomen, breast, neck and face. She stated that the man did not look at her before turning and firing.

Two individuals who had stopped outside the tavern identified Weeks. Weeks testified that he was "just riding along" with his friends and did not know about the plan to rob the tavern. At trial, the defense requested a jury instruction for the lesser-included crime of first-degree recklessly endangering safety. The court denied the request. Weeks subsequently moved for a new trial in a postconviction motion asserting that the court erred in not submitting this instruction. This motion was denied; Weeks appeals the denial of this motion.

The issues on appeal are: (1) is First-Degree Recklessly Endangering Safety, sec. 941.30(1), Stats., a lesser-included crime of First-Degree Intentional Homicide, sec. 940.01(1), Stats.; (2) does the expanded definition of "with intent to" in the revised statute apply to and define the "have an intent to" provision of the attempt statute, sec. 939.32, Stats.; and (3) was the defendant unfairly prejudiced by the exclusion of the lesser-included crime jury instruction?

## LESSER-INCLUDED OFFENSE

The defendant argues by analogy that since the court in *Hawthorne v. State,* 99 Wis. 2d 673, 682, 299 N.W.2d 866, 870 (1981)[4] found that the old Endangering

---

[4]The *Hawthorne* court states "[t]he conclusion that endangering safety is a lesser included offense of attempted first-degree

Safety by Conduct Regardless of Life statute was a lesser-included offense of the old Attempted First-Degree Murder statute, the revised Recklessly Endangering Safety statute, sec. 941.30, Stats., is a lesser-included offense of the revised First-Degree Intentional Homicide statute, sec. 940.01, Stats. We agree. The notes to the adopted Senate Bill found in the introductory comments on Wisconsin's new homicide law explicitly set forth the proposition advanced by the defendant.[5]

## DEFINITION OF "HAVE AN INTENT TO"

Former sec. 939.23(4), Stats. (1985–86), defined " 'with intent to' or 'with intent that' [to mean] that the actor either has a purpose to do the thing or cause the result specified *or believes that his act, if successful, will* cause that result." The revised sec. 939.23(4), Stats., defining criminal intent, replaces the above-italicized verbiage with "is aware that his or her conduct is practi-

---

murder is supported by long standing precedent in this court." *Hawthorne,* 99 Wis. 2d at 682, 299 N.W.2d at 870.

[5]*See* 1987 Senate Bill 191, *reprinted in* Wis J I—Criminal 1000, Appendix B. The legislative note regarding the repeal and recreation of sec. 940.01 states:

> NOTE: First-degree intentional homicide is analogous to the prior offense of first-degree murder. Subsection (2) formerly contained a narrower definition of "intent to kill" than the general definition of criminal intent. That narrower definition has been eliminated in the interest of uniformity. Section 939.23, stats., now defines the intent referred to.

Wis J I—Criminal 1000, Appendix B at 9. The legislative note regarding sec. 941.30 states: "NOTE: Subsection (1) [First-Degree Recklessly Endangering Safety] is analogous to the prior offense of endangering safety by conduct regardless of life." *Id.* at 14.

cally certain to" cause that result. In addition to conforming to the Model Penal Code, the revised statutory language was intended to expand the definition of intent and apply criminal statutes to those defendants who had not formed the actual mental purpose to cause the crime but were aware that their intentional acts were practically certain to cause the result. *See, e.g.,* Dickey, Schultz & Fullin, *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 Wis. L. Rev. 1323, 1336. This expanded definition of "with intent to" presents the question of whether the new definition applies to and defines the "have an intent to" element of the unrevised attempt statute.

To interpret the attempt statute narrowly could limit attempted homicides to those instances where the actor only has the intent to attain the result of another's death. Using the common law example of a prime minister and his carriage driver, an actor attempting to kill the prime minister could not be successfully prosecuted for attempted homicide of the driver under a narrow interpretation of the attempt statute even though the actor was aware that his conduct was practically certain to cause the death of the driver because the actor did not have the intent to kill the driver. *See* Dickey, Schultz & Fullin, *Clarity in the Law of Homicide,* 1989 Wis. L.Rev. at 1337 n.59. We conclude that a narrow reading of the attempt statute ignores legislative intent in light of related statutes.

The meaning of the "have an intent to" language in the attempt statute, sec. 939.32(3), Stats., should be defined and interpreted in relation to all criminal statutes, Chapters 939 through 951. *See Omernik v. State,* 64 Wis. 2d 6, 12, 218 N.W.2d 734, 738 (1974). We therefore conclude that the meanings of "with intent to"

found in sec. 940.01(1), Stats. (1987–88) and "with intent that," both defined in sec. 939.23(4), Stats. (1987–88), must be relied upon in determining the meaning of the "have an intent to" language found in the attempt statute.[6] This interpretation will ensure the fulfillment of legislative intent and avoid the anomalous carriage driver scenario.

## JURY INSTRUCTION

The defendant argues that the trial court erred when it denied his request for the jury instruction for the lesser-included offense of First-Degree Recklessly Endangering Safety. "[W]hether the evidence adduced at trial permits the giving of a lesser-included offense instruction" is a question of law that we review without deference to the trial court. *State v. Wilson,* 149 Wis. 2d 878, 898, 440 N.W.2d 534, 541 (1989). "It is error for a court to refuse to instruct on an issue which is raised by the evidence." *Id.* at 898, 440 N.W.2d at 542.

It is well settled law that multiple verdicts are to be provided to a jury when there is a reasonable basis for a criminal conviction on either the greater or lesser-included offenses. *State v. Bergenthal,* 47 Wis. 2d 668, 674, 178 N.W.2d 16, 20 (1970), *cert. denied,* 402 U.S. 972

---

[6]Section 939.32(3), Stats. (attempt), would, in light of the expanded definition of "have an intent to," read as follows:

An attempt to commit a crime requires the actor have an intent [i.e., either a purpose to do the thing or cause the result specified, or awareness that his or her conduct is practically certain to cause that result] to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally . . . that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor.

(1971). If a "reasonable view" of the evidence is sufficient to support a guilty verdict beyond a reasonable doubt for the greater- and lesser-included offenses, then no lesser-included instruction need be given. However, if a "reasonable view" of the evidence supports a guilty verdict of the lesser-included offense beyond a reasonable doubt but casts reasonable doubt as to some element or elements of the greater-included offense, then both verdict questions should be submitted to the jury upon request. *Id.* In other words, "[t]he lesser degree verdict [question] is not to be submitted to the jury unless there exists reasonable grounds for conviction of the lesser offense and acquittal on the greater." *Id.* at 675, 178 N.W.2d at 21.

> The key word in the rule is "reasonable." The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury . . .. However, there is not to be read into the rule the requirement that "there are not reasonable grounds on the evidence to convict of the greater offense." That goes too far. Where the defendant is able to demonstrate that there is no reasonable view of the evidence that warrants conviction on the greater offense, and the trial court agrees, there remains no issue on such charge to go to the jury.

*Id.* at 675, 178 N.W.2d at 20–21 (citation omitted).

██ The standard of review for sufficiency of the evidence in a criminal case requires the appellate court to view the evidence from the standpoint most favorable to the state and the conviction. *State v. Poellinger,* 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (1990). The appellate court may not reverse a conviction unless the evidence "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact,

acting reasonably, could have found guilt beyond a reasonable doubt." *Id.* A careful review of the record does not reveal evidence that would cast reasonable doubt on any element of Attempted First-Degree Intentional Homicide, the greater offense.

Weeks' partner in crime, for whose actions Weeks is vicariously culpable under sec. 939.05, Stats., fired a shotgun at Sylvia Schmidt through the door that Mrs. Schmidt had just closed. Under the expanded definition of intent within the attempt statute, the jury could have concluded that Weeks' partner either had the purpose to kill Mrs. Schmidt or was aware that his conduct was practically certain to kill her. At the time of the blast, the shotgun's muzzle was approximately three feet from the door. Under these circumstances, a jury could have found that the shooter acted with purpose to kill her. A jury may infer intent from the circumstances surrounding one's acts since direct proof of intent is rare. *State v. Hoffman,* 106 Wis. 2d 185, 200, 316 N.W.2d 143, 153 (Ct. App. 1982). In the alternative, a jury could have concluded that the shooter was aware that shooting at such close range was "practically certain" to cause Mrs. Schmidt's death.[7] A reasonable review of the facts does not support the contention that the shooter acted with purpose to kill Mrs. Schmidt.

Sylvia Schmidt saw the robbers and was shot shortly after she closed the wooden door. She testified that the shooter did not look at her before turning towards her and firing. Given these facts, it is difficult to prove that the shooter formed the intent to kill Mrs. Schmidt when he merely turned and blindly shot in the direction he knew a person was standing. The fact that the shooter wanted to conceal his identity by ordering

---

[7]*See supra* note 6 for the statutory definition of attempt in light of the expanded "have intent to" definition.

Harvey Schmidt to cover his eyes, together with other facts, is insufficient to prove the "have an intent to" kill element of the restricted attempt statute.

A reasonable view of the facts can only result in the finding that an actor who quickly turns and blindly fires a shotgun in the direction of a wooden door, knowing that a person is standing three feet away on the opposite side of the door, is aware that his conduct is practically certain to cause the death of that person. The majority concludes that the interpretation of "have an intent to" in sec. 939.32(3), Stats. (attempt), is properly supplemented by the definition of "with intent to" and "with intent that" in sec. 939.23(4), Stats. (criminal intent). This expanded definition of "have an intent to" leaves no reasonable doubt that Weeks was properly convicted on the greater charge of Attempted First-Degree Intentional Homicide, party to the crime, by the jury. The trial court therefore properly denied the defendant's request for a jury instruction for the lesser-included offense of First-Degree Recklessly Endangering Safety.

*By the Court.*—Judgment and order affirmed.

FINE, J. *(concurring).* Although I agree with the majority's result, I arrive there by a slightly different route. Specifically, I do not believe that we have to reach the issue of whether the word "intent" as used in section 939.32(3), Stats., has been modified by section 939.23(4), Stats.[1]

---

[1]Section 939.32(3), Stats., provides:

An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime

A trial court may submit a lesser-included offense to a jury "*only* when there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." *State v. Wilson,* 149 Wis. 2d 878, 898, 440 N.W.2d 534, 542 (1989) (emphasis in original). I agree that there were no reasonable grounds to acquit Gerald L. Weeks of the greater charge, attempted first-degree intentional homicide as party to a crime in violation of sections 940.01(1), 939.32, and 939.05, Stats.

A person is guilty of first-degree intentional homicide when he or she "causes the death of another human being with intent to kill that person or another." Section 940.01(1), Stats. The word "intent," as used in section 940.01(1), means either that the actor "has a purpose to do the thing or cause the result specified, *or is aware that his or her conduct is practically certain to cause that result.*" Section 939.23(4), Stats. (emphasis added). As the majority recognizes, this second prong has expanded the scope of first-degree intentional homicide prohibited by section 940.01(1) beyond that of first-degree murder prohibited by section 940.01, Stats. (1985–86). Dickey, Schultz, Fullin, *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 Wis. L. Rev. 1323, 1336–1339 (1989). Thus, a person is guilty of first-degree intentional homicide when he or she causes the death of another human being and is aware that his or her conduct is practically certain to cause that result. I agree with the majority that under

except for the intervention of another person or some other extraneous factor.

Section 939.23(4), Stats., provides:

"With intent to" or "with intent that" means that the actor either has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result.

212

the circumstances of this case it is not reasonable to conclude that the shooter was not aware that shooting at such close range was "practically certain" to cause Sylvia Schmidt's death even though, arguably, a reasonable jury could have found that he either did not have the purpose to kill her or actually hoped that she would not die.[2] That Mrs. Schmidt was saved from death by an "extraneous factor" reduced the crime to an "attempt"; it does not negate the shooter's "intent to kill," sec. 940.01(1), Stats., under the second prong of section 939.23(4). I do not agree, however, that we must decide whether the definition of "intent" in section 939.23(4) is incorporated into the attempt statute, section 939.32(3).

Section 939.32(3), Stats., provides, in pertinent part, that an "attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime . . . except for the intervention of . . . some . . . extraneous factor." Here, there is no doubt but that the shooter intended to shoot, irrespective of whether "intent" is given its common meaning of "purpose," *Webster's Third New International Dictionary of the English Language* 1176 (1976), or the meaning in section 939.23, Stats. By the same token, the shooter had the purpose to "attain a result which, if accomplished, would constitute" first-degree intentional homicide, section 939.32(3); that is, he purposefully shot at Mrs. Schmidt under circumstances that, but for the intervention of an extraneous factor, would have constituted the crime of

---

[2]To use an example proffered by Dickey, Schultz, and Fullin in their law review article, an arsonist who sets fire to a building knowing that some people will not be able to escape the blaze is guilty of first-degree intentional homicide even though he "does not have the purpose to cause their deaths" and, in fact, "hopes they will be able to escape." 1989 Wis. L. Rev. at 1337.

first-degree intentional homicide. *See* section 939.23(5), Stats. ("Criminal intent does not require proof of knowledge of the existence . . . of the section under which he is prosecuted or the scope or meaning of the terms used in that section."). Accordingly, we need not decide in this case whether the alternative definition of intent found in section 939.23 applies to section 939.32.