STATE of Wisconsin, Plaintiff-Respondent,

v.

Nathaniel L. Cox, Defendant-Appellant.†

Court of Appeals

*No. 2006AP419–CR. Submitted on briefs November 30, 2006.
—Decided February 14, 2007.*

2007 WI App 38

(Also reported in 730 N.W.2d 452.)

† Petition to review denied 6/12/07.

236

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph E. Redding* of *Glojek Limited* of West Allis.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Nathaniel L. Cox appeals from his convictions for attempted first-degree intentional homicide and endangering safety by use of a dangerous weapon. Cox complains of two irregularities in his trial. First, the trial court instructed the jury to consider a third charge, first-degree reckless endangerment, without instructing the jury that the charge is a lesser included offense of attempted homicide. After the jury returned guilty verdicts on both the greater and lesser charges, the court corrected the error by vacating Cox's conviction on the lesser charge. Second, during its deliberations, the jury sent a note to the judge asking for a particular photograph. No such photograph was in evidence. There is no record of what action the judge took in response, though the judge stated later that he would not have answered the question in the defendant's absence. Though we agree with Cox that both of these actions constituted easily avoidable mistakes by the trial court, mistakes alone do not merit reversal. The circuit court properly remedied its first error, and its second was harmless beyond a reasonable doubt, so we affirm.

¶ 2. The following facts are taken from the complaint and trial testimony. Cox and his girlfriend arrived at the home of an acquaintance and parked the girlfriend's car in the driveway. While Cox and the girlfriend were getting out of the car, the girlfriend's ex-boyfriend arrived in his car (a red Pontiac), pulled into the driveway behind the girlfriend's car, and asked to speak to the girlfriend. The girlfriend declined and she and Cox entered the residence. Once inside, they heard a loud crash, and Cox went outside, where he discovered that the ex-boyfriend had rammed his car

into the rear end of the girlfriend's. At some point, Cox drew a gun and fired several shots at the car, hitting the front tire, the driver's side door, the hood, and the front quarter panel. The ex-boyfriend, unhit, was able to drive the vehicle away.

¶ 3.  At trial, Cox claimed self-defense, testifying that after the crash, he was examining the damage to the back of the girlfriend's car when he heard the ex-boyfriend's car shift gears and saw it jerk forward. Cox testified that he feared the ex-boyfriend would run him over, and so he attempted to stop the car by firing at the tires.

¶ 4.  At the close of evidence, the court submitted three charges to the jury: attempted first-degree intentional homicide (Wis. Stat. §§ 940.01 and 939.32 (2003–04)[1]); first-degree recklessly endangering safety (Wis. Stat. § 941.30(1)[2]); and endangering safety by use of a dangerous weapon (Wis. Stat. § 941.20(2)(a)). The court gave no instruction as to lesser included offenses, and Cox's counsel made no objection. At some point during deliberations, one of the jurors wrote a note reading, "Is there a picture of the red Pontiac's front damage?" There is no record of any response by the judge. The jury convicted Cox of all three offenses. The court later handed down identical concurrent sentences

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] This charge included the penalty enhancer for use of a dangerous weapon (Wis. Stat. § 939.63(1)(b)). The State argued before the trial court that this was, in effect, an additional element of the reckless endangerment charge not present in the attempted homicide charge, making the former no longer a lesser included offense of the latter. The circuit court disagreed and the State has not raised the argument here, so we will not address it.

240

on the attempted murder and reckless endangerment counts and withheld sentence on the third count.

¶ 5.   Cox moved for postconviction relief, claiming that the court erred in convicting him of both a greater and a lesser included offense. The circuit court agreed and vacated the reckless endangerment charge, though Cox argued that the greater charge should be vacated.

¶ 6.   On appeal, Cox attacks his multiple convictions under two theories: he alleges that his prosecution for both the greater and lesser offense violated his Constitutional double jeopardy rights and also that his counsel was ineffective for failing to object to the multiple charges. We assume that the ineffective assistance theory is intended to preserve Cox's claim despite the fact that he failed to object to the jury instructions. In general, we will not address a claim of ineffective assistance of counsel where trial counsel has not testified at a postconviction hearing. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) ("We hold that it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel."); *State v. Curtis*, 218 Wis. 2d 550, 554–55, 582 N.W.2d 409 (Ct. App. 1998) (*Machner* hearing is "essential in every case where a claim of ineffective assistance of counsel is raised"). We will instead address Cox's double jeopardy claim directly; we may do so because the rule of waiver is one of judicial administration and not of appellate jurisdiction. *See State v. Hughes*, 2001 WI App 239, ¶ 7, 248 Wis. 2d 133, 635 N.W.2d 661.

¶ 7.   The double jeopardy clauses in the state and federal Constitutions contain three protections: (1) against a second prosecution for the same offense

after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense. *State v. Henning*, 2004 WI 89, ¶ 16, 273 Wis. 2d 352, 681 N.W.2d 871. This case falls within the third category, as Cox was initially convicted and punished for the same act under two different statutes. This is a violation of the double jeopardy clauses unless the legislature intended such multiple punishments. *State v. Davison*, 2003 WI 89, ¶¶ 27–28, 263 Wis. 2d 145, 666 N.W.2d 1. Where one offense is a lesser included offense of the other under WIS. STAT. § 939.66, the legislature has declared that one may be convicted of one or the other, but not both. *See id.*

■

¶ 8.   Though our courts have never addressed the issue in a double jeopardy context, it is settled law that first-degree reckless endangerment under WIS. STAT. § 941.30(1) is a lesser included offense of attempted first-degree intentional homicide under WIS. STAT. § 940.01(1). *State v. Weeks*, 165 Wis. 2d 200, 205–06, 477 N.W.2d 642 (Ct. App. 1991); *see also Hawthorne v. State*, 99 Wis. 2d 673, 682, 299 N.W.2d 866 (1981) (holding the former analogous crime of endangering safety by conduct regardless of life a lesser included offense of the former analogous crime of attempted first-degree murder). That is, first-degree reckless endangerment does not require proof of any fact in addition to those required for attempted first-degree intentional homicide, *see* WIS. STAT. § 939.66(1), and a defendant cannot be punished under both statutes for the same act. Sec. 939.66; *Hawthorne*, 99 Wis. 2d at 680–82.[3] We thus

---

[3] The State argues that reckless endangerment is not a lesser included offense of attempted homicide because reckless

agree with Cox and the circuit court that it was error to convict and sentence Cox under both statutes.

¶ 9. However, as we have said, error does not dictate reversal. Reversal is only appropriate if Cox was harmed by the errors. Harm was obviously present when Cox stood convicted of one more offense than the law allows, but the circuit court has since vacated the reckless endangerment conviction. The question is thus whether the circuit court's remedy eliminated any harm that the initial error caused Cox. We have addressed this question in *Hughes*, 248 Wis. 2d 133, a case with facts quite like this one.

¶ 10. In *Hughes*, the jury found the defendant guilty both of possession of cocaine with intent to deliver and simple possession, a lesser included offense, arising from the same act. *Id.*, ¶ 2. Unlike the jury in this case, the jury in *Hughes* was properly instructed, but nevertheless signed both guilty verdict forms. *Id.*, ¶¶ 2–3. On recognizing the jury's error, the circuit court entered judgment only on the possession-with-intent verdict, disregarding the jury's finding of guilt on the simple possession charge. *Id.*, ¶ 1. Hughes claimed

endangerment contains an element that attempted homicide does not: danger to another. Whatever the merits of this argument, we are bound by *Hawthorne*: " 'endangering safety' [is] included in the element of attempted first-degree murder of 'an unequivocal act which, except for the intervention of some extraneous force would have resulted in death of another.' " *Hawthorne v. State*, 99 Wis. 2d 673, 682, 299 N.W.2d 866 (1981) (footnotes omitted). The State also argues that, because *Hawthorne* and related cases were wrongly decided, it was not ineffective for Cox's counsel to believe that reckless endangerment was not a lesser included offense of attempted homicide. Since we are directly addressing the underlying double jeopardy violation, we need not address the State's argument.

on appeal that this was in error and that he was entitled to a new trial because the jury's verdict was "hopelessly ambiguous" and the trial court had deprived him of his right to a unanimous jury. *Id.*, ¶ 6.

¶ 11.   We rejected Hughes' claim that the verdict was ambiguous. *Id.*, ¶ 9. We noted that it is impossible to possess cocaine with the intent to deliver without also simply possessing cocaine; indeed, that is the crux of a lesser included offense under Wis. Stat. § 939.66(1). *Hughes*, 248 Wis. 2d 133, ¶ 9. Thus, to a jury un-schooled in the doctrine of the lesser included offense, it was completely consistent to return guilty verdicts on both charges. *See id.*, ¶ 12. Finding no infirmity in the jury's verdict on the possession-with-intent charge, we refused to grant Hughes a new trial. *Id.*, ¶ 1.

¶ 12.   *Hughes* is thus obviously a close analogue for this case. Cox seeks to distinguish *Hughes* by claiming that in this case the two verdicts *are* inconsistent, requiring that he acted with two different states of mind. Attempted homicide requires intent to kill, *see* Wis JI—Criminal 1070, while reckless endangerment requires recklessness, *see* Wis JI—Criminal 1345. Cox concedes that the definition of "intent" does not necessarily require that the defendant has a "purpose" to kill; "intent" can also mean that the defendant is aware that his or her conduct is practically certain to cause the death of the victim. Wis. Stat. § 939.23(3); *Weeks*, 165 Wis. 2d at 207–08. Still, Cox argues, "recklessness" requires that an actor create and be aware of an unreasonable and substantial risk of death or great bodily harm to another, Wis. Stat. § 939.24(1), and "unreasonable and substantial risk" of death is manifestly different from "practical certainty" of death. Thus, by finding that Cox acted with awareness of both the "unreasonable and substantial risk" of death and

the "practical certainty" of death, the jury returned "inherently inconsistent" verdicts.

¶ 13. Cox's logic is flawed. Though "unreasonable and substantial risk" of death and "practical certainty" of death are obviously *different* standards, they are not, as Cox claims, *inconsistent*. Rather, "practical certainty" of death is a species of "unreasonable and substantial risk"; specifically, it is an extremely unreasonable and highly substantial risk. To be aware that one's actions create a "practical certainty" of killing someone else does not *preclude* also being aware that one's actions pose an "unreasonable and substantial risk" to that person; it instead *guarantees* it.

¶ 14. And this logical conclusion is, of course, the reason that one crime is included in the other: *Hawthorne* and *Weeks* stand for the proposition that it is *impossible* to commit attempted homicide without also committing first-degree reckless endangerment. If the opposite were true—if Cox were correct and one could not commit attempted homicide while also committing reckless endangerment—then the latter could not be a lesser included offense of the former. The *Hawthorne/Weeks* holding that protects Cox from being convicted of both offenses also forecloses his claim that the guilty verdict on the lesser crime somehow calls into question the validity of the guilty verdict on the greater. No new trial is called for.

■

¶ 15. New trial aside, Cox argues in the alternative that the proper remedy for convictions of both a greater and a lesser included offense is to apply the "rule of lenity," which he believes means we should vacate the greater, rather than the lesser sentence. The defendant in *Hughes* also made this argument, and we rejected it. *Hughes*, 248 Wis. 2d 133, ¶ 13. We noted

there that the rule of lenity is a rule of construction applied to ambiguous criminal statutes, and we refused to apply it. We also said that the verdicts in that case were *not* ambiguous. *Id.* Cox takes this to mean that if the verdicts *are* ambiguous, we *would* apply the rule. Putting aside that, as we have seen, the verdicts in this case are not ambiguous either, Cox has pointed to no case from this jurisdiction or any other stating that the rule of lenity has any application outside of the realm of statutory construction. In fact, there are several cases in which either the trial court or the appellate court did exactly what the circuit court did here.[4] Vacating the lesser conviction is a reasonable remedy because a jury following the correct procedure would end its deliberations after finding guilt on the greater offense and never reach the lesser. The rule of lenity has historically and universally been considered a canon of statutory construction and that is where it will stay. By this statement, we shut whatever door Cox believes that the *Hughes* court left open.

■

¶ 16.   Cox's other claim is that the circuit court erred in its response (or lack of response) to the jury's inquiry whether there were photographs of the red Pontiac's front-end damage. Cox states his claim in terms of a due process violation; he notes that Wis. Stat. § 971.04(1)(b) protects a defendant's right to be present at trial and argues that the court violates due process

---

[4] *See, e.g., State v. Carlson,* 5 Wis. 2d 595, 607–08, 93 N.W.2d 354 (1958) (vacating arson conviction underlying felony murder conviction); *Ronzani v. State,* 24 Wis. 2d 512, 519, 129 N.W.2d 143 (1964) (vacating attempted armed robbery conviction underlying felony murder conviction); *State v. Hughes,* 2001 WI App 239, ¶ 12, 248 Wis. 2d 133, 635 N.W.2d 661 (listing further examples).

rights when it fails to follow statutory procedures. We see no need to address the due process argument because the right of a defendant to be present at trial is protected by the federal and state Constitutions. *State v. Anderson*, 2006 WI 77, ¶ 38, 291 Wis. 2d 673, 717 N.W.2d 74.

¶ 17. At the postconviction hearing, the trial court made clear that it did not remember receiving the question. However, it stated that it was satisfied that it had not responded because "I never address a question to the jury except on the record in the presence of all the parties, including the Defendant." The trial court also stated that it had reviewed the record and found that no picture of the front end of the car had been admitted into evidence, though there might have been one admitted at the preliminary hearing.[5] The trial court also speculated that the jury's request might not have been answered because the jury delivered its verdict before the court could respond. The trial court held that since it had not communicated with the jury, there was no constitutional violation, and that even if it was error not to address the jury's request, there was no prejudice to the defendant because the picture the jury sought was not in evidence.

¶ 18. On appeal, the State argues that Cox's right to presence was not violated because the court did not respond to the jury's inquiry, and there is no due process right to be present when the jury merely submits a question to the court. Cox responds that he had a right to be present when the question was "addressed," even if the court addressed it by deciding not to answer. We

---

[5] Our search of the record reveals that there was, in fact, such a picture included in the exhibits for the preliminary hearing.

will assume without deciding that Cox is correct on this point and turn to the question of harmless error.

¶ 19. Violation of a defendant's right to presence is subject to harmless error analysis. *See State v. Burton*, 112 Wis. 2d 560, 570, 334 N.W.2d 263 (1983) (applying harmless error test where judge communicated with jury outside defendant's presence). For an error to be harmless, we must be satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict. *Anderson*, 291 Wis. 2d 673, ¶ 114. The State notes that there was no photograph of the red Pontiac admitted into evidence, and so the court's only possible response to the question "Is there a picture of the red Pontiac's front damage?" would have been "no." Thus, even if the court had consulted with Cox and his counsel and answered the question, there is no possibility that this would have changed the jury's verdict. Cox responds that the court could have taken other actions, including reopening the evidence to allow the picture of the red Pontiac from the preliminary hearing to be submitted to the jury. Cox concedes that the court might well have decided not to do this, but nevertheless urges that he should at least have been allowed to make an argument before the court made its decision.

¶ 20. Even if we were to agree with Cox that he had a right to argue for the reopening of the evidence, and if we further assumed that he could have convinced the court to submit the picture to the jury, we would still need to find some likelihood that the verdict would have been different. Cox asserts that there is a "strong possibility" of a different result, but does not tell us why. He states that the jury may have been considering his

self-defense theory, wanting to know "how hard the victim rammed his car into [the girlfriend's] car to determine how much force was reasonably necessary for Cox . . . to stop a second such action." This is a non sequitur. Cox's self-defense theory was that he fired at the victim's car because he believed the victim intended to run him over. Cox provides us with no explanation of how the extent of damage to the girlfriend's unoccupied car bears on the reasonableness of Cox's belief that the victim would try to hit him next. We therefore agree with the State that any error by the trial court was harmless beyond a reasonable doubt.

*By the Court.*—Judgment and order affirmed.